**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

IN RE:

                                              Chapter 13

TIMOTHY NATION,

                                              Case No. 25-40322

        Debtor(s).

**CORRECTED OPINION[1]**

This matter is before the Court on the Debtor's Objection to Claim of J. Spence Properties, LLC (Claim #3-1). The Objection presents the issue of whether the Creditor's proof of claim in the amount of $29,100.00, asserted against the Debtor as guarantor of a commercial lease, should be allowed in full, reduced, or disallowed under 11 U.S.C. § 502(b)(6) and applicable Illinois law

**FACTS**

The following facts are supported by the record in this case. The Debtor filed a voluntary petition under Chapter 13 on August 4, 2025. On September 5, 2025, J. Spence Properties, LLC, ("Creditor") filed an unsecured claim in the amount of $29,100.00, the basis of which were amounts due under a terminated real property lease ("Claim"). Attached to the Proof of Claim is a Commercial Lease Agreement dated August 21, 2023 between the Creditor and 131 Hospitality, LLC ("LLC") for commercial real estate premises located at 131 S. Division St., Carterville, IL 62918 ("Lease"). The Lease is guaranteed by Timothy Nation, Manager of 131 Hospitality, LLC and the Debtor in this case.[2]

---

[1]This opinion is amended solely to correct a typographical error in a citation on page 7, changing "F.2d" to "F.3d" in *Platinum Supplemental Insurance Inc. v. Guarantee Trust Life Insurance Co.*, 989 F.3d 556, 563 (7th Cir. 2021). This correction is non-substantive and does not affect the Court's analysis or conclusion. As a result of this amendment, the footnotes have been renumbered.

[2] *See* Proof of Claim No. #3-1, filed by J. Spence Properties, LLC, (Commercial Lease Agreement)

The Debtor objected to the Claim on the grounds that the Debtor believed the Creditor had re-let the premises to a third party, and therefore the Creditor was not entitled to double recovery, requesting the Claim be disallowed.

The Creditor responded to the Debtor's objection, taking the position that the Claim arose from a liquidated damages provision expressly agreed to in the Lease and personally guaranteed by the Debtor. The Creditor maintained that the re-letting of the premises did not negate the Debtor's contractual liability and that the Claim complied with the statutory cap applicable to lease termination damages under the Bankruptcy Code. The Creditor further asserted that actual damages from the lease termination and abandonment of the premises would demonstrate that no double recovery had occurred.

A hearing was conducted on October 22, 2026, where the Court set a briefing schedule on the following issues: (1) whether 11 U.S.C. § 502(b)(6) applies to a guarantor on a lease; (2) whether the liquidated damages clause in the lease is enforceable under Illinois law; and (3) whether mitigation reduces liquidated damages under Illinois law.

An evidentiary hearing was conducted on December 17, 2025. Jennifer Spence, the principal of J. Spence Properties, LLC, provided testimony to the Court. She testified that the LLC and the Creditor entered into the Lease on August 21, 2023. The lease term was 3 years and the LLC was to pay initial monthly rents of $4,895.00 per month.[3]  Ms. Spence testified that she did not receive the rent that was due on April 1, 2025, and was notified by the Debtor on April 29, 2025 that LLC would be closing the restaurant in the leased premises on May 7, 2025. Ms. Spence further testified that she sent written notice to the Debtor dated April 30, 2025, informing the LLC and the Debtor that that the April 2025 rent would be offset by the rent deposit

---

[3] Notwithstanding the Lease terms, Proof of Claim #3-1 asserted a monthly rental rate of $4,850.00.

previously provided by the LLC.[4] Additionally, the written notice cites to Paragraph 3 of the Lease in asserting additional rents due for the months of May 2025 through October 2025. Ms. Spence testified that pursuant to this paragraph of the agreement, and as set forth in the notice, she calculated the Claim amount as six months of rents due for the months of May 2025 through October 2025 at $4,850.00 per month, for a total due of $29,100.00. Ms. Spence testified that she specifically relied on Paragraph 3 to calculate unpaid rents due and to exercise the liquidated damages clause of Paragraph 3 when preparing both the notice and Proof of Claim #3-1.

When questioned by the Debtor's counsel on the language of Paragraph 3 of the Lease, Ms. Spence testified that the LLC's notice of intent to terminate the lease was insufficient to comply with Paragraph 3's requirements; that the LLC was not current on rent payments and was, in fact, in default under the Lease at the time it terminated the Lease in May 2025 and vacated the premises. She agreed that nowhere in Paragraph 3 did the Lease provide that if the tenant is in default, an extra four months of rent was to be paid by the tenant at termination of the Lease.

Testimony was also provided regarding Paragraph 20 of the Lease, titled "Default and Remedies." Ms. Spence admitted that this provision deals with default under the terms of the lease and does not set out a pre-settled damages amount in the event of a breach of the Lease.

The Court took this matter under advisement at the December 17, 2025 hearing.

## DISCUSSION

This matter requires the Court to determine whether the Creditor's claim for $29,100.00, asserted against the Debtor as guarantor of a commercial lease, is allowable and, if so, in what amount. The issues presented are: (1) whether 11 U.S.C. § 502(b)(6) applies to a debtor–

---

[4]*See* Proof of Claim No. #3-1, filed by J. Spence Properties, LLC, (Official Notice).

guarantor; (2) whether Paragraph 3 of the Lease constitutes an enforceable liquidated damages provision under Illinois law; and (3) whether mitigation requirements under Illinois law affect the claim.

## I.    Lease termination damages in general

A properly executed and timely filed proof of claim is *prima facie* evidence of a claim's validity and amount. Fed. R. Bankr. P. 3001; *In re Hood,* 449 F. App'x 507, 509 (7th Cir. 2011)A proof of claim is allowed unless an interested party objects and produces evidence sufficient to rebut the claim. *Id*. at 510.  A claim objection cannot be sustained unless the objection falls under one of the enumerated exceptions of 11 U.S.C. § 502(b).  *Id*.

One such exception provides a cap on the damages claimed from termination of a real estate lease. Section 502(b)(6) limits a landlord's claim "for damages resulting from the termination of a lease of real property." 11 U.S.C. § 502(b)(6). This exception under the Bankruptcy Code limits such lease termination damages claimed by a creditor to the greater of twelve months of lease payments, or fifteen percent of the remaining lease payments due (not to exceed thirty-six months of lease payments), plus any unpaid rents due under the lease at the earlier of the petition date or the date that the debtor surrendered the property to landlord.  11 U.S.C. § 502(b)(6).

The Court reviews Creditor's Proof of Claim #3-1 in the amount of $29,100.00 to determine if it is within the statutory cap on lease termination damages. The claim is calculated at six months' rents of $4,850.00 per month, for the months of May 2025, June 2025, July 2025, August 2025, September 2025 and October 2025; this calculation was supported by the testimony of Ms. Spence.  Ms. Spence further testified that the leased property was surrendered

to the Creditor on May 7, 2025. Pursuant to Claim #3-1, rent of $4,850.00 was due for the month of May 2025 on May 1, 2025, before the surrender of the lease on May 7, 2025. The remaining amount of the Claim ($24,250.00) is due for periods after surrender of the leased premises.

Section 502(b)(6) limits a claim for prepetition rents to those actual rents and costs due up to earlier of the date of surrender of the lease or the petition date. 11 U.S.C. § 502(b)(6). This bankruptcy case was filed on August 4, 2025; the lease was surrendered to the Creditor on May 7, 2025. Therefore, applying the provisions of § 502(b)6) to the facts, $4,850.00 is claimed for prepetition rents. As to the lease termination damages, the cap is calculated at the greater of twelve months' rents or 15% of the remaining months due under the lease (up to 36 months). Creditor claims five months' rents for the period after the lease was surrendered.  Creditor's Proof of Claim is below the statutory cap of Section 502(b)(6).

**II.      Applicability of 11 U.S.C. § 502(b)(6) to a Guarantor**

The Court must next determine whether the lease cap under Section 502(b)(6) applies, since the Debtor is the guarantor of the Lease.  Courts addressing the issue have generally held that § 502(b)(6) applies to claims against a debtor who is liable as a guarantor of a lease, so long as the claim arises from termination of the lease. *In re Farley, Inc.*, 146 B.R. 739, 745 (Bankr. N.D. Ill. 1992); *In re Concepts Am., Inc.*, 621 B.R. 848, 862 (Bankr. N.D. Ill. 2020), aff'd, No. 1:20-CV-06599, 2024 WL 2209354 (N.D. Ill. May 15, 2024).  The analysis focuses on the nature of the claim to determine damages resulting from lease termination, rather than on whether the debtor is a lessee or a guarantor. *In re Concepts Am., Inc.*, at 862 (quoting *In re Arden*, 176 F.3d 1226, 1229 (9th Cir. 1999)). If the guarantor is liable for damages resulting from lease termination, the statutory cap of § 502(b)(6) applies.

Here, the Creditor's claim is premised upon the Debtor's personal guaranty of the LLC's commercial lease and seeks damages under that guaranty resulting from the LLC's early termination of that lease. Because the claim arises from termination of a lease of real property, § 502(b)(6) applies and limits any allowable termination damages asserted against the Debtor as guarantor.

### III.    Enforceability of the Alleged Liquidated Damages Provision

Having determined that Creditor's claim is below the statutory cap of Section 502(b)(6), the Court next turns to Proof of Claim #3-1 to determine whether the amount claimed is allowed. The principal dispute regarding the Claim concerns whether the claim calculation properly applies Illinois' landlord-tenant law in determining damages due under the Lease. The Debtor argues that under Illinois law, a landlord is required to mitigate loss from lease termination in calculating damages to avoid double payment.  The Creditor argues that the Lease contains a liquidated damages provision, such that loss mitigation is not required under Illinois law. The Court begins its analysis, therefore, by examining the lease document under applicable Illinois law.

Illinois law recognizes the effect of an enforceable liquidated damages clause in real estate leases. "A liquidated damages provision is an agreement by the parties as to the amount of damages that must be paid in the event of a default." *Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, 122 Ill. App. 3d 940, 947 (1984). Illinois courts apply a three-part test to determine enforceability:

> Under Illinois law, a liquidated damages clause is valid and enforceable if: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time

of contracting, bearing some relation to the damages that might occur; and (3) actual damages would be uncertain in amount and difficult to prove.

*Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020). If each of these elements is not satisfied, the provision is deemed a penalty and is unenforceable. *Id*. In interpreting a contract under Illinois law, the intention of the parties is determined from the document language unless an ambiguity exists. *Platinum Supplemental Insurance Inc. v. Guarantee Trust Life Insurance* Co., 989 F.3d 556, 563 (7th Cir. 2021).

The Lease was executed on August 21, 2023, between 131 Hospitality LLC (the "LLC") as tenant and the Creditor as landlord; the Debtor signed a separate Guaranty of the Lease (the "Lease").[5] Paragraph 3 of the Lease, titled "Lease Type and Early Termination Clause," provides:

> The term of this Lease shall be a three-year lease, thirty-six (36) months, commencing on Aug. 21, 2023 and ending Aug. 31, 2026. After one-year within the lease, if the tenant finds it necessary to terminate the lease, a written notice is required to the Landlord 45 days in advance of cancellation date and an additional four (4) months rent in additional [sic] to monthly rent up to cancellation date will be changed [sic] in order to cancel. Tenant may only exercise this option to terminate if it is then current with its lease payments to Landlord and remains current through the lease termination date, is not in default in any of the terms of this lease and vacates the property on or before the last day of the first lease year in the condition required by this lease (including sign removal with any damages repaired). If Tenant does not move out on or before cancellations date, tenant will be responsible for all rent loss, renovation and administrative costs incurred by the Landlord due to breach of lease agreement.

Thus, the Lease provides that, after one year, the tenant may terminate upon 45 days' written notice and payment of an additional four (4) months rent, in addition to paying monthly rent up to the cancellation date, provided the tenant is current in its payments at the time of the notice and is not otherwise in default. Significantly, Paragraph 3 expressly conditions the

---

[5] *See* Proof of Claim No. #3-1, filed by J. Spence Properties, LLC, (Commercial Lease Agreement)

tenant's ability to exercise this option upon being current in payments and not in default of the Lease. By its plain terms, Paragraph 3 describes an optional early termination right available only to a tenant who is not in default and who gives timely notice of its intent to terminate the Lease early.

Ms. Spence's testimony established that at the time that the LLC gave notice of its intent to vacate the leased premises, the LLC was not current on rent and was in default of the Lease. Paragraph 3 does not expressly provide that a defaulting tenant who abandons the premises owes four additional months' rent as liquidated damages, which fact Ms. Spence acknowledged in her testimony. Likewise, the Lease does not expressly provide that it was the parties' intent to provide for liquidated damages in the event of a default under the lease agreement; nor is there any language in Paragraph 3 where such intent can be inferred from its plain language.

A review of the entire Lease further undermines the characterization of Paragraph 3 as an applicable liquidated damages clause. Paragraph 20, titled "Default and Remedies," governs default and provides that upon nonpayment of rent and the expiration of notice, the landlord may terminate the lease and exercise its rights at law or in equity, including mitigation. Most notably, Paragraph 20 does not provide for any agreed prior settlement in lieu of actual damages in the event of a breach of the agreement.

In summary, Paragraph 3 grants the tenant a contractual early lease buyout option exercisable only under specific conditions, rather than establishing a liquidated damages remedy for a payment default. Paragraph 20 of the Lease preserves the Creditor's remedies for breach to all remedies available under Illinois law. The absence of language in the Lease clearly expressing an intent to fix damages in advance of default is significant in applying the test for an enforceable liquidated damages provision. The Lease does not set forth evidence of the parties'

intent to set damages in advance; therefore, the first prong of the test for enforceable liquidated damages under Illinois law is not met. Under Illinois law, each element of the test must be satisfied; therefore, there is no need to apply the remaining parts of the test. Accordingly, the Court finds that Paragraph 3 does not constitute an enforceable liquidated damages provision applicable to calculate the Creditor's damages from the LLC's default. Where no enforceable liquidated damages clause governs, the landlord is entitled only to actual damages proven, reduced by mitigation. !*Baird & Warner Residential Sales, Inc. v. RXHST Naperville, LLC,* No. 23-CV-16113, 2025 WL 2044017, at \*6 (N.D. Ill. July 21, 2025). The Creditor's Claim cannot be based on liquidated damages under the Lease; thus, the Claim must be reviewed as a claim for actual damages, and Illinois law on mitigation of damages must be applied in the calculation of the Creditor's Claim.

### IV.    Effect of Mitigation Law

Paragraph 20 of the Lease provides that upon the tenant's default, the Creditor may recover unpaid rents to the extent permitted by law. Under Illinois law, a landlord has a duty to mitigate damages following a tenant's breach and termination of the lease. 735 ILCS 5/9-213.1.  The landlord is required to show that it took reasonable steps to mitigate its damages; if the landlord does not show such reasonable steps, then the damages it could otherwise recover are reduced and the losses that it could have reasonably avoided are not recoverable.  *Danada Square, LLC v. KFC Nat. Mgmt. Co.,* 392 Ill. App. 3d 598, 608, 913 N.E.2d 33, 41 (2009) The determination of whether the landlord's steps to mitigate losses from the lease termination is a question of fact, and the burden of proof is on the landlord. *Id*.

Ms. Spence testified that the LLC surrendered the leased premises in May 2025; the leased premises were re-let in mid-June 2025, and the new tenant was not obligated to pay rent during

the build-out phase of the re-letting, which time period went through August 2025.  The Creditor acted promptly to re-let the leased premises, and the Creditor's actions in waiving the rents to the new tenant during the brief build-out phase of the subsequent lease were reasonable

Consequently, the Court finds that the Creditor appropriately mitigated its damages for that portion of its Claim evidencing actual rents due for the months of May 2025 through August 2025, but no reduction in rents is appropriate since the Creditor did not receive new rents during that period.  As for the remaining periods claimed, although the evidence established that the premises were re-let and the new tenant began paying rents in September 2025, no evidence was presented as to the monthly rent paid by the new tenant, nor as to any resulting deficiency in rents due under the original Lease. Accordingly, the Creditor has not met its burden of proof to establish its claim for recoverable actual damages for the months of September 2025 and October 2025, as set forth in Proof of Claim #3-1 and the amounts included in the Claim for those months are disallowed.

### V.      Allowable Claim

For the foregoing reasons, Proof of Claim #3-1 is therefore allowed as a non-priority unsecured claim in the amount of $19,400.00, consisting of $4,850.00 for the month of May 2025 as pre-surrender actual damages and $4,850.00 per month for the months of June 2025, July 2025 and August 2025 as lease termination damages.  This claim amount is well below the lease termination cap under 11 U.S.C. § 506(a) and will be allowed without further reduction.

### CONCLUSION

Section 502(b)(6) applies to the Debtor as guarantor and limits any claim for damages resulting from termination of the Lease. Paragraph 3 of the Lease does not constitute an enforceable liquidated damages provision applicable to the Debtor's default. The Creditor's

10

claim is allowable only to the extent of unpaid rent and proven actual damages consistent with Illinois mitigation principles, subject to the limitations of § 502(b)(6). Based on this determination, the Creditor shall be allowed a non-priority unsecured claim in the amount of $19,400.00. A separate order shall enter.

ENTERED: March 27, 2026

/s/ Mary E. Lopinot

UNITED STATES BANKRUPTCY JUDGE